TAYLOR *v.* GREENE.

ESTATES OF DECEDENTS—CLAIMS—PROMISSORY NOTES—PAYMENTS
—EVIDENCE.

> Where a claim against a decedent's estate was based on two
> promissory notes written on the same piece of paper, one for
> $300, payable to claimant, and the other for $50, payable to
> her husband, which notes were not in her possession, but
> were asserted to have been taken by decedent, because worn,
> for the purpose of giving a new note, and claimant denied
> ever having any other note of decedent, a paper, found
> among decedent's effects, on which was a note to claimant
> for $150 and one of $50 to her husband, and a check of dece-
> dent, payable to claimant or bearer, were admissible, in con-
> nection with testimony tending to show her receipt of the
> amount of the check as a payment on a note of decedent,
> and of new notes for the difference between that amount and
> the amount of the notes so found, to disprove the claim.

Error to Calhoun; Smith, J.    Submitted January 29,.
1902.    Decided March 4, 1902.

Barbary Taylor presented a claim against the estate of
James F. Smiley, deceased (George H. Greene, executor),
on a promissory note.    The claim was disallowed in both.
the probate and circuit courts, and claimant brings error.
Affirmed.

*Hatch & Page*, for appellant.

*John E. Foley*, for appellee.

HOOKER, C. J.    The claimant filed a claim against the·
estate of one Dr. Smiley, based upon an alleged promissory
note not in her possession.    The claim was denied in pro-
bate court, and upon appeal was. again denied upon a
hearing before the judge without a jury.

The claimant's testimony tended to prove that Dr.
Smiley gave two notes on one piece of paper,—one for·

$300, payable to herself, and one for $50, payable to her husband; that he paid and indorsed interest upon this paper several times; and that on one occasion he came to her house and wanted to take the note away, for the purpose of giving her a new one, because it was getting worn. Her own testimony was inadmissible to prove this, but a daughter from Indiana, on a visit, testified to witnessing the transaction through a crack of a door. A Mr. Hyde testified that he saw a note for $300 or $350—and he could not tell which—in her possession about that time, bearing Dr. Smiley's name.

By way of defense the executor produced several papers that he found among the effects of the testator, viz.: A paper upon which was written a note to the claimant for $150, and one to her husband for $50, dated October 28, 1895. Written on the back of this were what purported to be four indorsements. The first was: "Paid interest to Oct. 28, 1896, $7.50." Similar ones for October 28, 1897 and 1898, followed. Then followed: "Paid interest and $100 Sept. 8, 1898[9], $106.82." Similar indorsements were made on the $50 note, paying interest to September 8, 1899, with the amounts $2.50, $2.50, $2.50, and $2.15, respectively. The following check was introduced:

"No. 172.          MARSHALL, MICH., Sept. 9, 1899.
"Commercial Savings Bank: Pay to Barbary Taylor, or bearer, $108.60, one hundred and eight and 60-100 dollars.          J. F. SMILEY."

Also a check for $10 to show payment of interest for 1897. A stub in a check book to correspond with the last-mentioned check was introduced, showing the purpose of the check. The executor testified to finding some other notes for small amounts payable to the claimant, but none for $300 or $350. It was proved that two other notes on one piece of paper, purporting to be made by Dr. Smiley on September 8, 1899, were in the claimant's possession, one of which had been collected through the probate court against Smiley's estate. They were for $50 each, payable to claimant and her husband respectively. The claims for

these notes had been allowed, and the husband's had been paid. Claimant refused to receive payment upon hers. The findings filed show that the judge thought the claim that a $300 or $350 note existed was disproved by the circumstances, and that the notes were for $150 and $50, respectively, and that these were paid. Error is assigned upon the conclusions of fact and upon the admission of the various writings produced by the executor.

There was some testimony tending to corroborate the inferences drawn from these writings,—e. g., that interest had been indorsed on the note that Hyde saw; that the claimant had received interest in sums of $10, which would accord with the theory that the notes aggregated $200, drawing 5 per cent. interest; and the testimony of Hyde that the claimant admitted that she had received $100, which he said had been previously indorsed on the note. If these papers were competent evidence, there was a question of fact for the trial judge to decide, which we cannot review. It is said that the papers should not have been admitted; that the fact that notes aggregating $200, or that two $50 notes, were given, does not prove that a note of $300 was not given; and that there is no presumption of payment from the fact that a check payable to the claimant or bearer was found among the decedent's effects; and that indorsements not in her handwriting prove nothing. That is not the situation here. The claimant denied ever having any note but the one upon which she based her claim, yet it was shown that other notes were allowed by the probate court; that the aggregate of these notes and the amount of this check found among decedent's effects equaled the notes of $150 and $50 in his possession. The bank book showing the entry of the amount of the check, and the admission to Hyde that the sum was paid to the claimant, furnish strong evidence in support of defendant's contention. We think these papers were admissible, for, although no living witness testified to the circumstances of their giving, such circumstances are deducible from the facts proved, which are sufficient to prove their

genuineness. It may be that the stub in the check book, standing alone, was a declaration of the deceased, not strictly admissible to prove the purpose for which the check was given, and that it should have been excluded; but we cannot think that this unimportant paper affected the result, or in any way injured the claimant's case.

This covers the substantial questions in the case, though the numerous assignments of error are not individually discussed. The judgment of the learned circuit judge is affirmed.

MOORE, GRANT, and MONTGOMERY, JJ., concurred. LONG, J., did not sit.